IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KOCH INC.,                                    )
                                              )
                Plaintiff,                    )      TC-MD 110508N
                                              )
        v.                                    )
                                              )
MALHEUR COUNTY ASSESSOR,                      )
                                              )
                Defendant.                    )      **DECISION**

Plaintiff appeals the real market value of property identified as Account 2360 (subject

property) for the 2010-11 tax year. A telephone trial was held in this matter on December 6,

2011. Glenn Koch (Glenn) appeared and testified on behalf of Plaintiff. Jonathan Koch (Jon)

also testified on behalf of Plaintiff.[1] Chris Russell (Russell), Appraiser, appeared and testified on

behalf of Defendant. Richard Thurmond (Thurmond), Chief Appraiser, observed the trial.

Plaintiff's Exhibits 1 through 16 were offered and received without objection. Defendant offered

Exhibits A through D; Plaintiff objected to Defendant's Exhibit C because Plaintiff previously

requested in its motion for discovery (motion) any information about other sales, and Defendant

did not provide to Plaintiff the sales included in Exhibit C prior to exhibit change.

The information provided in Exhibit C was timely exchanged under Tax Court Rule-

Magistrate Division (TCR-MD) 10 C, but Glen argues that it should have been provided sooner

in response to Plaintiff's motion. On July 7, 2011, Plaintiff filed its motion requesting:

> "1. Either a written or taped copy of the minutes or the [M]arch 3, 2011 hearing of
> Koch Inc. before Malheur County Board of Property Tax Appeals.
>
> "2. A copy of any new information the Defendants will be presenting in the
> hearing with Koch Inc. before the Oregon Tax Court."

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name.
However, in this case, the court's Decision recites facts and references to two individuals with the same last name,
Koch. To avoid confusion, the court will use the first name of the individual being referenced.

The parties discussed Plaintiff's motion during the case management conference held in this matter on October 10, 2011. During that conference, Defendant agreed to provide, and did provide, Plaintiff with a copy of the tape from Plaintiff's hearing before the Board of Property Tax Appeals (BOPTA); Defendant also provided a certified transcript of the BOPTA hearing. (*See* Def's Ex A, B.) Defendant agreed to provide the information requested by Plaintiff and no formal discovery order was issued in this case. With respect to the sales identified in Defendant's Exhibit C, Russell stated that he did not have the information any sooner than he sent it to Plaintiff because it was research that he completed in preparation for trial.[2] Russell further noted that he complied with the exchange deadline in TCR-MD 10 C, as discussed during the case management conference held in this matter. The court admitted Defendant's Exhibit C over Plaintiff's objection because it was timely exchanged under TCR-MD 10 C.

## I. STATEMENT OF FACTS

The subject property is a "medical office" located in Ontario, Oregon, on a 16,450 square-foot lot with a 2,496 square-foot improvement.[3] (Def's Ex 2C.) The subject property was previously a "7-Eleven store." (Def's Ex A-3, 1C.) Jon testified that it is now used by nurse practitioners. Plaintiff purchased the subject property in May 2002, for $125,000, and subsequently remodeled it at a reported cost of $41,000. (Def's Ex A-3.) Jon testified that he completed the remodel work, which he described as "nice," but not "fancy."

/ / /

---

[2] It is noteworthy that Plaintiff did not contend that the information in Defendant's Exhibit C was unavailable to Plaintiff prior to trial; by contrast, it appears to be publically-available information with the possible exception of Russell's specific adjustments in his comparable sales analysis.

[3] Defendant's Exhibit 2C states the subject property "year built" as 1983. However, the BOPTA hearing transcript includes a description of the subject property by Jon as "40 years old." (*See* Def's Ex A-3.) It is unclear whether the subject property was built in 1983 or whether that is the effective age determined by Russell.

The 2010-11 real market value of the subject property set by Defendant and sustained by BOPTA is $248,550. (Def's Ex 2C; Ptf's Compl at 6.) Thurmond stated that the subject property's 2010-11 maximum assessed value was $294,993, which is unchanged from the 2004-05 tax year. He explained that, because the subject property's real market value has been less than the maximum assessed value for each tax year since the 2004-05 tax year, the real market value has been the assessed value each year, and the maximum assessed value has not increased during that period of time. Plaintiff requested a 2010-11 real market value of $162,320, which was the previously adjudicated value for the 2004-05 tax year. (*See* Ptf's Compl at 1.) Russell testified that the 2010-11 tax year is the first tax year for which the real market value of the subject property is not the adjudicated value. He testified that Defendant is required by law to determine real market value based on market evidence.

Glenn testified that he did not learn of the concept of maximum assessed value until meeting with Defendant's representatives on November 22, 2011, to discuss the possibility of settling this appeal. He testified that, based on his conversation with Defendant's representatives, he was left with the understanding that "true cash value" is irrelevant to "assessed values." Glenn testified that, despite the irrelevance of "true cash value" to "assessed value," it appears to him that Defendant is still interested in "true cash value" based on Defendant's "Request for Review of True Cash Value of Property" form. (*See* Ptf's Ex 5.) He testified that the assessed value increased by more than three percent per year between 2002 and 2010, in violation of the annual three percent cap on maximum assessed value increases.

In support of Plaintiff's requested 2010-11 real market value of $162,320, Glenn provided numerous articles concerning market trends near the January 1, 2010, assessment date and over the past decade. (*See* Ptf's Ex 8-14.) Glenn testified that a graph from "Moodys/REAL

Commercial Property Price Index * * * * * All Properties - National Index," illustrating that 2010 prices fell to 2002 levels, and an article from *Forbes*, also including the "Moodys/Real Commercial Property Price Index," are particularly supportive of Plaintiff's requested real market value. (Ptf's Ex 13, 14.) Glenn and Jon both testified that the evidence that 2010 prices have fallen to 2002 levels supports Plaintiff's requested real market value, $162,320, which is the 2004-05 real market value set by BOPTA and is based on the 2002 purchase price of the subject property. Glenn did not present any comparable sales, but, instead, focused on the evidence presented by Defendant at the BOPTA hearing and at trial.

Russell testified that the subject property is a medical office, and there are not many sales of medical offices to consider. He testified that the August 2008 sale of an office property located "directly behind" the subject property[4] for $218,624 is the best evidence of value. (Def's Ex A-5, A-22, 2C.) Russell testified that he confirmed the sale price with the buyer and the seller, both of whom stated that the "terms did not have any bearing on the sale price." (*See* Def's Ex 1D.) Russell testified that he made adjustments to his comparable sale including an upward adjustment of $17,766 for its inferior location; an upward adjustment of $47,190, or $7.20 per square foot,[5] for the smaller lot size (10,400 square feet); a downward adjustment of $2,813 for the larger improvement size (2,592 square feet); a total upward adjustment of $3,025 for "lot improvements" including asphalt and concrete; and an downward, percentage adjustment for time.[6] (Def's Ex 2C.) Russell concluded an adjusted sale price of $259,583, which he considers supportive of the subject property roll real market value. (*See* Def's Ex 2C.)

---

[4] The subject property is located on 4th Avenue, and Russell's comparable sale is located "directly behind" it on 5th Avenue. (Def's Ex A-5, A-22.)

[5] Russell testified that the adjustment of $7.20 per square foot was based on a "2006 reappraisal."

[6] Russell testified that he did not calculate a time adjustment in "dollars and cents," as he did with the other adjustments. (*See* Def's Ex 2C.)

Glenn testified that he takes issue with Defendant's determination of the 2010-11 real market value of the subject property based entirely on one sale, asserting that, for purposes of obtaining a bank loan, "[t]here must be a minimum of three comparables to establish value." (*See* Ptf's Ex 3.) He testified that Russell's comparable sale is problematic for several other reasons. Glenn testified that that there was no down payment included as part of the sale and, based on his experience as a realtor, that is unusual; it typically means that the sale price is higher than it would be otherwise. (Ptf's Ex 2.) He testified that the buyer, Eastern Oregon Center for Independent Living, is a non-profit organization that receives funding from federal grants. (*See id.*) Glenn noted that the sale occurred in 2008, well before the January 1, 2010, assessment date. He testified that the property was vacant at the time of sale in 2008, noting that vacant buildings are a greater liability than occupied buildings because the owner must pay more for insurance and must pay certain expenses without any offsetting income.

Russell identified three comparable "bare land sales" of lots ranging in size from 9,750 to 38,383 square feet, to which he made net upward adjustments. (Def's Ex 9C.) Russell's sale #1 occurred on June 27, 2007, for an adjusted price per square foot of $9.12; his sale #2 occurred on June 15, 2007, for an adjusted price per square foot of $11.59; and his sale #3 occurred on December 24, 2008, for an adjusted price per square foot of $11.18.[7] (*Id.*) Russell testified that his land value conclusion is supportive of his value for the subject property. Glenn testified that he thinks Russell's land sale #1 is the best comparable land sale for the subject property of those identified by Russell. (*See* Def's Ex 9C.) He testified that land sale #1 is located near the hospital; he does not think that proximity to a hospital is desirable for a commercial property.

///

---

[7] The unadjusted prices per square foot were $8.21 (sale #1), $10.42 (sale #2), and $10.95 (sale #3). (*See* Def's Ex 9C.)

Russell also provided two sales labeled A and B; he testified that they are *not* meant to be comparable sales for the subject property. (*See* Def's Ex 10C.) He testified that he included sales A and B to demonstrate what one can purchase for the price requested by Plaintiff. Russell's sale A is a 2,344 square-foot property built in 1930, situated on a 21,904 square-foot lot. (Def's Ex 10C.) It sold on September 14, 2010, for $185,000. Russell's sale B is a 2,870 square-foot property built in 1954, situated on a 16,375 square-foot lot. (*Id.*) It sold on February 5, 2008, for $150,000.[8] Both properties are located on North Oregon Street and include smaller lot improvements ("asphalt") than the subject property. (*Id.*)

Russell testified that sales A and B are located in a much worse neighborhood than the subject property; it is a "low-income" residential neighborhood plagued by "gang violence." He testified that sale A is a "mom and pop" grocery store that was built in 1930 and sale B is an "adult store." Russell testified that sale A has not been maintained; the building is run down and in poor condition and the floors "move" and "sag." He testified that Sale B is in a similarly poor condition with a leaky roof. Russell testified that, by contrast, the subject property is a nice, well-maintained property located on one of the best corners for a medical office. Glenn testified that Russell's sales A and B appear reasonable to him and support Plaintiff's requested value; he noted, however, that he did not have sufficient time to "verify" those sales. He testified that sales A and B are located on North Oregon Street, which is a main arterial street and, therefore, a good location for commercial property. (*See* Def's Ex 11C-14C (photographs, 15C (map).)

/ / /

/ / /

/ / /

---

[8] The unadjusted price per square foot of sale A is $78.92; the unadjusted price per square foot of sale B is $52.26. (*See* Def's Ex 10C.)

II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11 tax year. Plaintiff also challenged the 2010-11 maximum assessed value, asserting that it was increased in excess of three percent in violation of Measure 50.

A.      *Real market value*

"Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[9]

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). There are three methods of valuation that are used to determine real market value: the cost approach, the sales comparison approach, and the income approach; all three approaches must be considered, although all three may not be applicable. OAR 150-308.205-(A)(2)(a); *see also Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). The sales comparison approach was the only approach considered by the parties. "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they

---

[9] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

reflect arms-length market transactions." OAR 150-308.205-(A)(2)(c). Thus, "[t]he court looks for arm's length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, WL 21263620 at *3.

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (citations omitted). Competent evidence includes "testimony from licensed professionals such as appraisers, real estate agents[,] and licensed brokers." *Hausler v. Multnomah County Assessor*, TC-MD No 110509D at 6 (Nov 15, 2011). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff requests 2010-11 real market value of $162,320 for the subject property. That value is based on the 2002 purchase price of the subject property ($125,000), increased by the cost of the subsequent remodel ($41,000, approximately). For the 2004-05 tax year, BOPTA determined the real market value of the subject property to be $162,320, based on that evidence. Plaintiff asserts that, based on market evidence indicating that 2010 real property prices have returned to 2002 levels, the court should reduce the 2010-11 real market value to the previous 2004-05 adjudicated value. Plaintiff provided no comparable sales in support of that request.

"A recent sale of the property in question is important in determining its market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). To be persuasive of market value, the sale must be "a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing[.]" *Id.* Plaintiff's purchase of the subject property in 2002 is not "recent" with respect to the January 1, 2010, assessment date and, therefore, is not persuasive evidence of the 2010-11 real market value of the subject property. Plaintiff presented no other evidence of the 2010-11 real market value and has not met its burden of proof.

As stated above, the court "has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court" under ORS 305.412. Defendant presented evidence of the 2010-11 real market value including one comparable sale located "directly behind" the subject property and three land sales.[10] Glenn criticized Defendant's comparable sale for several reasons and also noted that it is problematic to determine real market value based on a single comparable sale. The court agrees with Plaintiff that one comparable sale is typically inadequate to determine real market value and agrees that there is some evidence that the sale identified by Defendant may not be sufficiently comparable to the subject property as of January 1, 2010. The court finds that the value evidence presented is inconclusive and the court cannot determine the 2010-11 real market value based on the evidence presented.

B.     *Maximum assessed value*

At trial, Glenn stated that it appeared that the "assessed value" was increased between the 2004-05 and 2010-11 tax years in excess of the annual three percent increase allowed under Measure 50. The court understands that claim to pertain to maximum assessed value, because assessed value is the lesser of real market value and maximum assessed value. ORS 308.146.

---

[10] Defendant also presented two sales that Russell testified were *not* comparable to the subject property. That evidence does not help the court determine the 2010-11 real market value of the subject property.

The concept of maximum assessed value was established in Oregon by Measure 50. *See* Or Const, Art XI, § 11(1)(a); *Ellis v. Lorati* (*Ellis*), 14 OTR 525, 532-33 (1999) (describing the history of the adoption of Measure 50). For the 1997 tax year, maximum assessed value was computed as 90 percent of each property's 1995 real market value. *Ellis*, 14 OTR at 533. For tax years after 1997, maximum assessed value typically increases by three percent annually. Or Const, Art XI, § 11(1)(b); *see also* ORS 308.146(1) (stating that "[t]he maximum assessed value of property shall equal 103 percent of the property's assessed value from the prior year or 100 percent of the property's maximum assessed value from the prior year, whichever is greater"). "Under Measure 50 and the statutes implementing it, there is no linkage between the [real market value] and [maximum assessed value]. Instead, each value is determined and one of the two, the lesser, becomes, in any given year, the assessed value * * * for the property." *Gall v. Dept. of Rev.*, 17 OTR 268, 270 (2003). Assessed value is defined by statute as the lesser of the property's real market value or maximum assessed value. ORS 308.146(2).

As stated by Thurmond, the 2010-11 maximum assessed value of the subject property, $294,993, has remained unchanged since the 2004-05 tax year. For each of those years, the subject property's real market value was less than the maximum assessed value and, therefore, was the assessed value. The 2004-05 real market value was adjudicated by BOPTA and, for the subsequent five tax years, fluctuated only as a result of trending and other permissible changes under ORS 309.115. *See Niemeyer v. Dept. of Rev.*, 14 OTR 34, 35 (1996) ("ORS 309.115 permits taxpayers to claim the benefit of a prior adjudicated value for up to five years with certain exceptions"). The 2010-11 tax year was the first tax year after 2004-05 for which the subject property real market value was not the adjudicated value. After the five year period stated in ORS 309.115, the county assessor's office may revalue properties "based on market

data" and, "particularly in an active market," that revaluation may "result in a sudden, significant increase in value once the five-year period expires." *Oregon Wine Services and Storage, LLC v. Yamhill County Assessor*, TC-MD No 090385C at 8 (Jan 13, 2011).

The 2010-11 roll real market value of the subject property, $248,550, is less than the 2010-11 maximum assessed value of the subject property and is, therefore, the 2010-11 assessed value. The increase of the 2010-11 assessed value in excess of three percent from the previous year's assessed value was due to Defendant's determination of the 2010-11 real market value following the end of the five year period for which the real market value was the adjudicated value. The 2010-11 maximum assessed value was not increased in violation of Article XI, section 11, of the Oregon Constitution and ORS 308.146. Plaintiff's claim that the 2010-11 maximum assessed value was improperly increased in excess of three percent is denied.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff did not establish by a preponderance of the evidence that the 2010-11 real market value of the subject property was $162,320. The court further finds that the value evidence presented was inconclusive and the court cannot determine the 2010-11 real market value of the subject property. Finally, the court finds that the subject property 2010-11 maximum assessed value is not in violation of Article XI, section 11, of the Oregon Constitution and ORS 308.146. Plaintiff's appeal must, therefore, be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of the 2010-11 real market value of property identified as Account 2360 is denied.

/ / /

/ / /

DECISION  TC-MD 110508N                                                                                  11

IT IS FURTHER DECIDED that the Plaintiff's appeal of the 2010-11 maximum assessed value of property identified as Account 2360 is denied.

Dated this ____ day of March 2012.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on March 16, 2012. The Court filed and entered this document on March 16, 2012.*